UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JIMENEZ,<br><br>   Plaintiff,<br><br>   v.<br><br>HAXTON MASONRY, INC.,<br><br>   Defendant. | Case No. 18-cv-07109-SVK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 59 |

Pending before the Court is Defendant Haxton Masonry, Inc.'s motion for partial summary judgment. Dkt. 59. In light of the current public health restrictions, the Court held a telephonic hearing on May 19, 2020 at 10:00 a.m. Dkt. 67. All parties have consented to the jurisdiction of the undersigned. Dkts. 13, 20.

After considering the briefs, arguments at the hearing, and the relevant law, the Court GRANTS Defendant's motion for partial summary judgment for the reasons discussed below.

**I.   BACKGROUND**

Plaintiff David Jimenez worked for Defendant as a concrete finisher between 2013 and 2017. Dkt. 24 ¶ 14; Dkt. 59 at 7; Dkt. 63 at 1. Plaintiff filed this class action against Defendant alleging federal Fair Labor Standards Act ("FLSA") claims and the following California state law claims: - Second Cause of Action (California Labor Code § 2802 - Failure to Pay Travel Expenses); Third Cause of Action (California Labor Code §§ 510, 558, 1194, 1198 - Failure to Pay All Wages Due); Fourth Cause of Action (California Labor Code §§ 201-203 - Failure to Pay Wages When Due); Fifth Cause of Action (California Labor Code § 226 - Failure to Provide Accurate Itemized Statements); Sixth Cause of Action (California Labor Code § 2699 et seq. - Private Attorney General Act); and Seventh Cause of Action (California Business and Professions Code § 17200 et seq. - Unfair Business Practices). Dkt. 59 at 7 (citing Dkt. 24). Plaintiff asserts

that these wage and hour claims arose during work and/or travel between certain California construction jobsites. Dkt. 24.

Defendant's construction projects in California included work at federal facilities. Dkt. 59 at 8; Dkt. 59-1; Dkt. 65-1. These sites included Marine Corps Base Camp Pendleton, Naval Base Ventura County (Point Mugu Naval Air Weapons Station), Naval Air Station North Island (Navy Base Coronado), Naval Base Point Loma, Seal Beach Naval Weapons Station, and Marine Corps Air Station Miramar. Dkt. 59 at 8-9; Dkt. 59-1; Dkt. 65-1. Defendant asserts that it had thirty-one (31) construction projects at these sites during the relevant class period. Dkt. 59 at 8-9; Dkt. 59-1; Dkt. 65-1. It is undisputed that Plaintiff and/or the putative class members worked at each of these sites. Dkt. 59-1; Dkt. 65-1. Defendant now seeks partial summary judgment on the following California state law claims on the grounds that they arise under the federal enclave doctrine:

- Second Cause of Action (California Labor Code § 2802 - Failure to Pay Travel Expenses): as to claims arising from work performed at Navy Base Coronado and Naval Base Point Loma
- Third Cause of Action (California Labor Code §§ 510, 558, 1194, 1198 - Failure to Pay All Wages Due): as to claims arising from work performed at Navy Base Coronado and Naval Base Point Loma
- Fourth Cause of Action (California Labor Code §§ 201-203 - Failure to Pay Wages When Due): as to claims arising from work performed at Navy Base Coronado and Naval Base Point Loma
- Fifth Cause of Action (California Labor Code § 226 - Failure to Provide Accurate Itemized Statements): as to claims arising from work performed at Camp Pendleton, Navy Base Coronado, and Naval Base Point Loma
- Sixth Cause of Action (California Labor Code § 2699 et seq. - Private Attorney General Act): as to claims arising from work performed at Camp Pendleton, Navy Base Coronado, Naval Base Point Loma, Miramar, Seal Beach, and Point Mugu
- Seventh Cause of Action (California Business and Professions Code § 17200 et seq. - Unfair Business Practices): as to claims arising from work performed at Camp

Pendleton, Navy Base Coronado, Naval Base Point Loma, Miramar, Seal Beach, and Point Mugu.

Dkt. 59 at 17.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. "[W]ithout granting summary judgment of an entire claim, courts may rely upon Rule 56 to determine certain facts or elements of a claim as established and thereby dispose of the need to adjudicate them at trial." *Magic Link Garment Ltd. v. ThirdLove, Inc.*, No. 18-CV-07366-PJH, 2020 WL 1940802, at *5 (N.D. Cal. Apr. 22, 2020) (citing *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id*. at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

"The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). However, "the mere existence of a scintilla of evidence in

1  support of the plaintiff's position" is insufficient to defeat a motion for summary judgment. *Id*.
2  (quoting *Anderson*, 477 U.S. at 252). "Where the record taken as a whole could not lead a rational
3  trier of fact to find for the nonmoving party, there is no genuine issue for trial." *City of Pomona*,
4  750 F.3d at 1049-50 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
5  587 (1986)).

### III. ANALYSIS

#### A. Evidentiary Issues

In support of its motion for partial summary judgment, Defendant submitted the declaration of Cassandra Reed, its Office Manager and former Senior Project Administrator, Payroll Administrator, and Contacts Administrator. Dkt. 59-1. Plaintiff objects to page 3, lines 3-27, and page 4, lines 1-7 of Reed's declaration (1) as inadmissible hearsay and (2) on the grounds that Reed did not have personal knowledge of the contents of her statement. Dkt. 64 at 2. In reply, Defendant argues that the portions of Reed's declaration that Plaintiff objects to fall under the business records exception to hearsay. Dkt. 65 at 9-10. Defendant further contends that the business records exception does not require a witness to have personal knowledge. Dkt. 65 at 9-10. Defendant also submitted an amended declaration from Reed. Dkt. 65-1.

The business records exception, as set forth in Rule 803(6) of the Federal Rules of Evidence, states that "[a] qualified witness must testify that (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . .; (C) making the record was a regular practice of that activity." *Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *7 (N.D. Cal. Sept. 26, 2019) (quoting Fed. R. Evid. 803(6)(A)-(D); *Miller v. Fairchild Indus., Inc*., 885 F.2d 498, 514 (9th Cir. 1989)) (internal quotation marks omitted).

As to Plaintiff's objection that the Reed declaration contains inadmissible hearsay, "[a]t the summary judgment stage . . . the Court does not focus on the admissibility of the evidence's form, so long as the contents are capable of presentation in an admissible form at trial." *Lomeli*, 2019 WL 4695279, at *7 (internal quotation marks omitted). "Defendant[] need not rely upon the declaration[] at trial; [it] can simply have the declarant[] testify." *Id*. As to Plaintiff's personal

United States District Court
Northern District of California

knowledge objection, courts have determined that "Rule 803(6)'s foundation requirement may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation." *Id.* at *5 (quoting *Miller*, 885 F.2d at 514) (internal quotation marks omitted). "Furthermore, the testimony of the purportedly qualified witness is sufficient evidence to support a finding that he is qualified." *Lomeli*, 2019 WL 4695279, at *5. The Court is satisfied that Reed is a qualified witness within the meaning of Rule 803(6).

Accordingly, the Court **OVERRULES** both of Plaintiff's objections.

Defendant also submitted several requests for judicial notice. Dkts. 60, 60-1, 60-2, 60-3, 61, 61-1, 61-2, 61-3, 61-4, 61-5, 62, 62-1, 62-2, 62-3, 62-4. Plaintiff did not object to any of these documents. Accordingly, the Court **GRANTS** Defendant's requests for judicial notice.

### B. Whether Partial Summary Judgment is Procedurally Deficient

In his opposition and again at the hearing, Plaintiff argues that partial summary judgment is procedurally deficient. Dkt. 63 at 2-3. However, "[a] party may move for summary judgment, identifying each claim or defense—or the *part of each claim or defense*—on which summary judgment is sought." Fed. R. Civ. P. 56 (emphasis added). The Court determines that the arguments presented by Defendant in this action (*see infra* Part III.C) address a distinct part of each claim and therefore are sufficiently precise to merit consideration under Rule 56. Accordingly, the motion for summary judgment is not procedurally deficient.

### C. Federal Enclave Law as Applied to Plaintiff's Claims

#### 1. Legal Framework

"Under the U. S. Constitution, the United States has the power to acquire land from the states for certain unspecified uses and to exercise exclusive jurisdiction over such lands." *Albers v. Yarbrough World Sols., LLC*, No. 5:19-CV-05896-EJD, 2020 WL 2218964, at *6 (N.D. Cal. May 7, 2020). "These lands are known as 'federal enclaves.'" *Id.* (citing *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1034 (N.D. Cal. 2005)). "Article 1, Section 8, Clause 17 grants Congress the power to 'exercise exclusive legislation in all cases whatsoever' over all places

purchased with the consent of a state 'for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings.'" *Albers*, 2020 WL 2218964, at *6 (citing *Swords to Plowshares*, 423 F. Supp. 2d at 1034). "The power to exercise 'exclusive legislation' holds the same meaning as 'exclusive jurisdiction.'" *Albers*, 2020 WL 2218964, at *6 (citing *Swords to Plowshares*, 423 F. Supp. 2d at 1034) (citation omitted). "Exclusive jurisdiction assumes the absence of any interference with the exercise of the functions of the Federal Government and . . . debar[s] the State from exercising any legislative authority, including its taxing and police power, in relation to the property and activities of individuals and corporations within the territory." *Albers*, 2020 WL 2218964, at *6 (quoting *Silas Mason Co. v. Tax Comm'n of State of Washington*, 302 U.S. 186, 197 (1937); *S. R. A., Inc. v. State of Minn.*, 327 U.S. 558 (1946)) (internal quotation marks omitted).

At its core, Defendant's motion asserts that California wage and hour laws do not apply jobs on federal enclaves. Dkt. 59 at 5-16. Specifically, Defendant argues that Plaintiff's places of employment were the federal enclaves at which he worked, and his claims for travel time necessarily arise from his work at those federal enclave jobsites. *Id*. Defendant further contends that Plaintiff's claims for recovery were incurred for the objective of performing work at the enclave jobsites; thus, his claims are indivisibly bound to the sites to and from which he travelled. Dkt. 65 at 4-5. Plaintiff contends that his travel to and from the jobsites constitute actual, physical work and because his travel was conducted outside of federal enclaves, his claims do not arise from federal enclaves. Dkt. 63 at 4-8.

In determining whether a claim arises on a federal enclave, district courts look to see where all the "pertinent events" took place. *Rosseter v. Indus. Light & Magic*, No. C 08-04545 WHA, 2009 WL 210452, at *2 (N.D. Cal. Jan. 27, 2009). "A plaintiff's place of employment is the significant factor in determining where the plaintiff's employment claims arose under the federal-enclave doctrine." *Haining v. Boeing Co.*, No. 2:12-CV-10704-ODW, 2013 WL 4874975, at *3 (C.D. Cal. Sept. 11, 2013). Critically for the case at hand, "[t]he enclave's law governs the employment claims of an employee of a federal contractor operating on a federal enclave." *Id*. "[I]n federal enclave cases, "the jurisdiction of the federal court depends upon . . . the locus in

1   which the claim arose." *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125
2   (N.D. Cal. 2012) (citation omitted). "[T]he federal enclave doctrine bars only those claims which
3   arose on a federal enclave." *Id.* at 1126 (citation and internal quotation marks omitted). "[A]ny
4   claims stemming from projects on federal lands are barred." *Albers*, 2020 WL 2218964, at *7.
5   "On federal enclaves, in the absence of federal legislation displacing state law, those state laws
6   that existed at the time that the enclave was ceded to the federal government remain in force." *Id.*
7   at *6 (citing *Paul v. United States*, 371 U.S. 245, 268 (1963) ("Laws subsequently enacted by the
8   state are inapplicable in the federal enclave unless they come within a reservation of jurisdiction or
9   are adopted by Congress.")). "Three exceptions exist to this rule: (1) where Congress has, by
10  statute, provided a different rule; (2) where the state explicitly retained the right to legislate over
11  specific matters at the time of cession; and (3) where minor regulatory changes modify laws
12  existing at the time of cession." *Albers*, 2020 WL 2218964, at *7 (citing *United States v.*
13  *Sharpnack*, 355 U.S. 286, 294-95 (1958)).
14      Thus, the analysis of whether a claim is barred by the federal enclave doctrine requires
15  three inquiries: (1) whether the site is a federal enclave and when it became one; (2) whether the
16  claim arises from the federal enclave; and (3) whether the claim existed before the enclave was
17  created.
18                  2.   Analysis
19      The Court must first determine whether the sites in question are federal enclaves, and, if
20  so, when they became enclaves. Defendant contends that Camp Pendleton (established as a
21  federal enclave in 1942), Point Mugu (established as a federal enclave in 1954), Navy Base
22  Coronado (established as a federal enclave in 1921), Naval Base Point Loma (established as a
23  federal enclave in 1852), Seal Beach (established as a federal enclave in 1944) and Miramar
24  (established as a federal enclave in 1943) are federal enclaves. Dkt. 59 at 8-13. Defendant
25  supports these contentions with numerous requests for judicial notice, the Reed declarations, and
26  federal caselaw (*id.*), and Plaintiff does not dispute Defendant's contentions. Accordingly, the
27  Court finds that there is no dispute of material fact that the six sites are federal enclaves and were
28  established as such in the years identified above.

1    As to the third inquiry, Defendant contends that Plaintiff's state law claims based on a state
2 law promulgated after the date the enclave was established are barred by the federal enclave
3 doctrine. Dkt. 59 at 8-16.  Defendant contends that the Second Cause of Action (California Labor
4 Code § 2802 - Failure to Pay Travel Expenses) was enacted in 1937; Third Cause of Action
5 (California Labor Code §§ 510, 558, 1194, 1198 - Failure to Pay All Wages Due) were enacted in
6 1937; Fourth Cause of Action (California Labor Code §§ 201-203 - Failure to Pay Wages When
7 Due) were enacted in 1937; Fifth Cause of Action (California Labor Code § 226 - Failure to
8 Provide Accurate Itemized Statements) was enacted in 1943; Sixth Cause of Action (California
9 Labor Code § 2699 et seq. - Private Attorney General Act) was enacted in 2004; and Seventh
10 Cause of Action (California Business and Professions Code § 17200 et seq. - Unfair Business
11 Practices) was enacted in 1997.  Dkt. 59 at 16-17.  Apart from a dispute over Plaintiff's second
12 cause of action (*see infra* Part III.D), Plaintiff does not dispute these contentions.  Accordingly,
13 the Court finds no dispute of material fact that any state law claim arising on these enclaves and
14 based on a state law post-dating the day the enclave was established is barred by the federal
15 enclave doctrine.

16    With the first and third inquiries satisfied, the briefs and oral argument focused on the
17 second inquiry whether Plaintiff's claims arise from federal enclaves.  On this point, the Court
18 agrees with Defendant.  As Defendant persuasively argues, Plaintiff's claims for unpaid travel
19 time and wages stem from his travel to and from federal enclave jobsites.  In *Albers v. Yarbrough*
20 *World Solutions,* the plaintiff, a construction worker, filed suit against his employer for violations
21 of the Racketeer Influenced and Corrupt Organizations Act and California wage and hour claims.
22 *Albers,* 2020 WL 2218964, at *1.  One of the projects that the plaintiff worked on for the
23 defendants was the Monterey Presidio, which is a federal enclave.  *Id*. at *2.  The defendants filed
24 a motion to dismiss the plaintiff's state law claims because they were barred under the federal
25 enclave doctrine.  *Id*. at * 6.  The plaintiff argued, among other things, that the federal enclave
26 doctrine was inapplicable because the defendants did not perpetuate their tortious acts exclusively
27 on federal enclaves.  *Id*.  The Court determined that the "[p]laintiff's state-law wage and hour
28 claims that stem from the Monterey Presidio project are barred by the federal enclave doctrine.

8

1 Likewise, any claims stemming from projects on federal lands are barred." *Id*. at *7. The Court
2 did, however, find that Plaintiff pled sufficient facts about non-federal enclave projects to support
3 his wage and hour claims. *Id*. at *8.
4    In *Jamil v. Workforce Resources,* the plaintiffs worked for the defendants as cultural
5 advisors and role players on military base Camp Pendleton. *Jamil v. Workforce Res., LLC*, No.
6 18-CV-27-JLS (NLS), 2018 WL 2298119, at *1 (S.D. Cal. May 21, 2018). They filed suit in state
7 court alleging violations of various California wage and hour laws and sought recovery for travel
8 time to and from the military base and other off-the-clock work. *Id*. at *1, *3. The defendants
9 removed the case to federal court on the basis of the federal enclave doctrine, and the plaintiffs
10 filed a motion to remand arguing that the entirety of the wage and hour violations happened
11 outside of the federal enclaves. *Id*. at *1, *3-*4. The court found:

> Although some events took place on Camp Pendleton and others took place at Defendants' office, it is clear that the majority of the pertinent events took place on a federal enclave. The allegations stem from Plaintiffs' employment and work performed at Camp Pendleton. This is sufficient for federal jurisdiction.

15 *Id*. at *4 (citations omitted).
16    In the instant case, Plaintiff's claims stem from work conducted on the various federal
17 enclave sites. As Defendant argues, travel time is not the work performed; rather, it is merely a
18 preliminary or postliminary activity that is parasitic to the actual work on the jobsite. The Court
19 agrees, as the jobsites were the reason for Plaintiff to travel. Put another way, Plaintiff travelled to
20 the jobsites for sole purpose of working at them—his travel time had no other purpose other than
21 to deliver him to his place of work, which happened to be a federal enclave. At the hearing,
22 Plaintiff argued that he spent hours driving to and from federal enclave jobsites and posed the
23 hypothetical that if he were to be in an accident while travelling on California roads, Defendant
24 would be subject to California law and could not use the federal enclave doctrine as a shield to
25 avoid liability. This hypothetical, as stated, is not sufficiently developed for the Court to
26 determine the scope of employer liability, if any. Regardless, the hypothetical does not rest on the
27 undisputed facts in this case—that is, that Plaintiff was driving to and from jobsites located on
28 federal enclaves. Additionally, Plaintiff does not go so far to suggest that California wage and

1  hour laws apply to his work on the enclaves—in fact, he acknowledges that he pleaded federal law
2  for work performed on the enclaves themselves. Dkt. 63 at 7.
3       Driving was not Plaintiff's job—it was merely a means of getting to Plaintiff's actual
4  jobsite. Because Plaintiff's claims stem from work performed on federal enclaves, they are barred
5  by the federal enclave doctrine. *See Albers,* 2020 WL 2218964, at *7; *see also Jamil*, 2018 WL
6  2298119, at *2.

### D. Unjust Enrichment

Plaintiff argues that if federal enclave law applies to his claims, his claim under California Labor Code § 2802 should survive because it is based on the common law claim of unjust enrichment. Dkt. 63 at 10. Plaintiff, citing *Mersnick v. USProtect Corp.*, No. C-06-03993 RMW, 2006 WL 3734396 (N.D. Cal. Dec. 18, 2006), argues that a claim for unjust enrichment is based on common law that predates when any of the six sites became federal enclaves. *Id.* Defendant differentiates *Mersnick*, where the plaintiff explicitly pled unjust enrichment as a cause of action in his complaint and argues that Plaintiff did not include unjust enrichment as a cause of action in the instant case. Dkt. 65 at 8. Additionally, Defendant notes that "[t]he California common law elements of an Unjust Enrichment claim are: the 'receipt of a benefit and the unjust retention of the benefit at the expense of another'" and that California Labor Code §2802—Plaintiff's second cause of action—does not contain any references to "receipt of a benefit" or "unjust retention of the benefit," so it cannot be an unjust enrichment claim. Dkt. 65 at 8-9. This Court agrees with Defendant. Accordingly, the Court finds that there is no dispute of material fact that Plaintiff's second cause of action does not survive the federal enclave doctrine.

/////
/////
/////
/////
/////
/////
/////

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for partial summary judgment on the following claims:

- **Second Cause of Action** (California Labor Code § 2802 - Failure to Pay Travel Expenses): as to claims arising from work performed at Navy Base Coronado and Naval Base Point Loma
- **Third Cause of Action** (California Labor Code §§ 510, 558, 1194, 1198 - Failure to Pay All Wages Due): as to claims arising from work performed at Navy Base Coronado and Naval Base Point Loma
- **Fourth Cause of Action** (California Labor Code §§ 201-203 - Failure to Pay Wages When Due): as to claims arising from work performed at Navy Base Coronado and Naval Base Point Loma
- **Fifth Cause of Action** (California Labor Code § 226 - Failure to Provide Accurate Itemized Statements): as to claims arising from work performed at Camp Pendleton, Navy Base Coronado, and Naval Base Point Loma
- **Sixth Cause of Action** (California Labor Code § 2699 et seq. - Private Attorney General Act): as to claims arising from work performed at Camp Pendleton, Navy Base Coronado, Naval Base Point Loma, Miramar, Seal Beach, and Point Mugu
- **Seventh Cause of Action** (California Business and Professions Code § 17200 et seq. - Unfair Business Practices): as to claims arising from work performed at Camp Pendleton, Navy Base Coronado, Naval Base Point Loma, Miramar, Seal Beach, and Point Mugu.

Defendant's requests for judicial notice are **GRANTED**, and Plaintiff's objections to the Reed declaration are **OVERRULED.**

**SO ORDERED.**

Dated: June 5, 2020

SUSAN VAN KEULEN
United States Magistrate Judge

11