UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID JIMENEZ,

          Plaintiff,

     v.

HAXTON MASONRY, INC.,

          Defendant.

Case No.  18-cv-07109-SVK

**ORDER GRANTING PLAINTIFF'S MOTION FOR COLLECTIVE AND CLASS CERTIFICATION**

Re: Dkt. Nos. 74, 75, 76, 77, 78, 80, 83

## I.     INTRODUCTION

Plaintiff David Jimenez ("Plaintiff") brings this lawsuit on behalf of himself and similarly situated former and current employees against Defendant Haxton Masonry, Inc. ("Defendant" or "Haxton").  Dkt. 24 ("First Amended Complaint").  Plaintiff alleges that Defendant failed to pay wages and overtime pay in violation of the Fair Labor Standards Act ("FLSA"), failed to pay travel expenses, including rental cars, gas, meals, and lodging, failed to pay all wages when due, failed to provide accurate itemized statements, a violation under the Private Attorney General Act, and unfair business practices.  *Id.*  Before the Court is Plaintiff's motion for collective and class certification ("Motion").  Dkts. 74, 75.

All parties have consented to the jurisdiction of a magistrate judge.  Dkts. 13, 20.  The Court held a hearing on January 5, 2021.  Dkt. 83.  After considering the Parties' submissions, arguments at the hearing, the case file, and relevant law, the Court **GRANTS** Plaintiff's motion for collective and class certification for the reasons discussed below.

## II.     BACKGROUND

### A.     Factual Background

Defendant is a concrete and masonry contractor with a main office and work yard in Yuma

United States District Court
Northern District of California

Arizona.  Dkts. 76 at 8; 76-2 Declaration of Cassandra Reed ("Reed Decl.") ¶ 2.  From November 21, 2014 to present ("the relevant time period"), Haxton work sites, comprising at least 182 California construction projects, have been primarily located in Southern California. Dkts. 76 at 8; 76-3 Declaration of Cosme Garcia ("Garcia Decl.") ¶ 5.  Haxton has two Divisions: Concrete and Masonry.  Dkts. 76 at 9; 76-4 Declaration of Jose Aguayo ("Aguayo Decl.") ¶ 2.  While Concrete Division employees prepare and construct concrete slabs and footings, Masonry Division employees primarily construct masonry walls and barriers.  Dkts. 76 at 9; Aguayo Decl. ¶ 2. During the relevant time period, approximately fifty-nine (59) Haxton field workers resided in Arizona and worked on California jobs, consisting of approximately twenty-four (24) Concrete Division employees and approximately thirty-four (34) Masonry Division employees.  Dkt. 76 at 8-9.

### B.     Procedural History

Plaintiff initiated this putative collective and class action in November 2018.  Dkt. 1.  In the First Amended Complaint, filed in March 2019, Plaintiff pleads the following claims for relief: (1) failure to pay wages and/or overtime in violation of the FLSA pursuant to 29 U.S.C. §§ 201 et seq., 29 U.S.C. § 216(b), 29 U.S.C. §§ 251, et seq., and 29 C.F.R. § 785.39; (2) failure to pay travel expenses in violation of California Labor Code § 2802; (3) failure to pay all wages due in violation of Labor Code §§ 510, 558, 1194, and 1198; (4) failure to pay wages when due in violation of Labor Code §§ 201-203; (5) failure to provide accurate itemized statements in violation of Labor Code § 226; (6) Private Attorney General Act in violation of Labor Code § 2699 et seq.; and (7) unfair business practices in violation of Business and Professions Code § 17200 et seq.  Dkt. 24.  In sum, Plaintiff alleges Haxton failed to pay Arizona hourly workers wages and/or overtime for time spent traveling to job sites in California and loading and unloading tools at the Haxton yard.  Plaintiff also alleges Haxton failed to reimburse Arizona hourly workers' lodging expenses incurred during overnight jobs in California.

### C.     Motion for Certification of a Collective Action and Class Certification

On August 21, 2020, Plaintiff filed the instant Motion to certify two FLSA collective actions and a class under Federal Rule of Civil Procedure 23.  Dkts. 74, 75.  Plaintiff seeks

United States District Court
Northern District of California

1    conditional certification of the following FLSA collective actions: "[a]ll hourly workers residing

2    in Arizona who traveled to remote job sites in California; [a]ll hourly workers residing in Arizona

3    who were not paid for loading time at the Haxton yard" from November 21, 2015 to the present.

4    Dkt. 74 at 6-8.

5         Plaintiff also seeks certification under Federal Rule of Civil Procedure 23 of a class of

6    "[a]ll Haxton hourly workers residing in Arizona who incurred lodging expenses for work in

7    California" from November 21, 2014 to the present.  *Id.* at 7-8.

8         Plaintiff seeks appointment of David Jimenez as class representative and Granahan Law,

9    P.C. as class counsel.  *Id.* at 24.

## III.    EVIDENTIARY OBJECTIONS

11        Plaintiff objects to Defendant's declarations presented in support of its opposition (Dkt.

12   76), which includes the declarations of Jose Aguayo, Miguel Covarrubias, Francisco Borboa,

13   Francisco Montanes, Jesús Carbajal, Benjamin Cornejo, Faustino Peréz García, Jesús Pérez,

14   Rubén Zazueta, Gilberto Contreras, and José U. Acosta.  Dkt. 78.  Plaintiff asserts that because

15   these witnesses were not specifically identified and disclosed during the discovery phase of

16   litigation, Defendant should not be allowed to use these witnesses to supply evidence here.  *Id.*

17        Defendant responds with a number of arguments, the most compelling of which is that

18   under Rule 26, its Initial Disclosures included additional possible witnesses that are "current and

19   former employees of Defendant Haxton."  Dkt. 80 at 2-3.  Defendant points out that Plaintiff also

20   uses this language in identifying "[c]urrent and former employees, supervisors, foremen,

21   managers, shareholders, and owners of Defendant Haxton" as potential witnesses in its

22   disclosures.  *Id.* at 3.  Further, Defendant argues that it was not required to provide a supplemental

23   disclosure where the additional information, the specific employees, was made known to Plaintiff

24   during the discovery process and/or in writing.  *Id.* at 2, 6.

25        The Court takes the point that the Parties both included the general category of "current

26   and former employees" of Defendant Haxton.  Further, the Parties have engaged in sufficient

27   discovery up to the instant Motion such that Plaintiff cannot say he is surprised that Defendant

28   would submit declarations from these particular employees.  Accordingly, Plaintiff's evidentiary

1    objections to the declarations are **OVERRULED**.

2    **IV.    COLLECTIVE ACTION**

3        Plaintiff seeks certification of FLSA actions for "[a]ll hourly workers residing in Arizona

4    who traveled to remote job sites in California; [a]ll hourly workers residing in Arizona who were

5    not paid for loading time at the Haxton yard" from November 21, 2015 to the present.  Dkt. 74 at

6    6-8.

7        **A.    Legal Standard**

8        Under the FLSA, an employee may bring a collective action on behalf of other "similarly

9    situated" employees.  29 U.S.C. § 216(b).  "[P]articipation in the collective action is a statutory

10   'right' held equally and individually by each party plaintiff, whether originally appearing in the

11   complaint or later opting in."  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108 (9th Cir.

12   2018) (citing 29 U.S.C. § 216(b)).  The Ninth Circuit noted that "neither the FLSA nor the case

13   law of this circuit offers much express guidance on collective action practice" and attempted to

14   clarify the proper procedure for collective actions.  *Id.*

15       **1.    Two-Stage Approach**

16       "First, at or around the pleading stage, plaintiffs will typically move for preliminary

17   certification," which "refers to the dissemination of notice to putative collective members,

18   conditioned on a preliminary determination that the collective as defined in the complaint satisfies

19   the 'similarly situated' requirement of section 216(b)."  *Id.* at 1109.  At this early stage, the

20   Court's analysis is "typically focused on a review of the pleadings but may sometimes be

21   supplemented by declarations or limited other evidence."  *Id.* (citation omitted).  The level of

22   consideration at this stage is "lenient" and "loosely akin to a plausibility standard, commensurate

23   with the stage of the proceedings."  *Id.* (citations omitted); *see also Rivera v. Saul Chevrolet, Inc.*,

24   No. 16-cv-05966-LHK, 2017 WL 3267540, at *3 (N.D. Cal. July 31, 2017) ("The standard for

25   certification at this stage is a fairly lenient one that typically results in certification.") (internal

26   quotation marks and citation omitted).  If preliminary certification is granted, then a court-

27   approved notice would be disseminated to the putative collective action members.  *Campbell*, 903

28   F.3d at 1101.  "In contrast to class actions pursuant to Rule 23 of the Federal Rules of Civil

United States District Court
Northern District of California

1  Procedure, potential members of a collective action under the FLSA must 'opt in' to the suit by

2  filing a written consent with the court in order to benefit and be bound by a judgment." *Rivera*,

3  2017 WL 3267540, at *2 (citations omitted).

4  "[T]he second stage will come at or after the close of relevant discovery," when "[t]he

5  employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly

6  situated' requirement in light of the evidence produced to that point." *Campbell*, 903 F.3d at 1109

7  (citations omitted). It is at this time when "[t]he district court will then take a more exacting look

8  at the plaintiffs' allegations and the record." *Id.* "Because of its purpose and timing,

9  decertification can resemble a motion for partial summary judgment on the 'similarly situated'

10  question, and may be combined with cross-motions for summary judgment." *Id.* at 1109-10

11  (citations omitted). At this time, "the plaintiff bears a heavier burden" and is "subject to a stricter

12  standard." *Id.* at 1117-18; *Rivera*, 2017 WL 3267540, at *3 ("It is at this second stage that the

13  Court makes a factual determination about whether the opt-in plaintiffs are actually similarly

14  situated..."). "[A]s a general rule, [this] two-step process, culminating in a decertification motion

15  on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible

16  collective actions, then eliminating those whose promise is not borne out by the record."

17  *Campbell*, 903 F.3d at 1110.

18  ### 2. "Similarly Situated" Requirement

19  "There is no established definition of the FLSA's 'similarly situated' requirement, nor is

20  there an established test for enforcing it." *Id.* at 1111 (citation omitted). The Ninth Circuit

21  observed two approaches to the "similarly situated" requirement and concluded "that party

22  plaintiffs must be alike with regard to some *material* aspect of their litigation." *Id.* at 1114. "If

23  the party plaintiffs' factual or legal similarities *are* material to the resolution of their case,

24  dissimilarities in other respects should not defeat collective treatment." *Id.* Indeed, "what matters

25  is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the

26  resolution of the party plaintiffs' claims, in the sense of having the potential to advance these

27  claims, collectively, to some resolution." *Id.* at 1115. "Plaintiffs bear the burden of showing that

28  the plaintiffs are 'similarly situated' for purposes of § 216(b)." *Sandoval Ortega v. Aho*

*Enterprises, Inc.*, No. 19-cv-00404-DMR, 2020 WL 4584227, at *11 (N.D. Cal. Aug. 10, 2020) (citation omitted).  "Courts have held that conditional certification requires only that plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Id.* (citation omitted).  Further, "[t]he fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *Rabin v. PricewaterhouseCoopers LLP*, 16-cv-02276-JST, 2019 WL 9078785, at *2 (N.D. Cal. Apr. 5, 2019) (citations omitted).  Competing declarations would create a "he-said-she-said situation" and while "defendant's evidence [may] later negate the plaintiff's claims, [] that should not bar conditional certification at the first stage." *Coates v. Farmers Group, Inc.,* No. 15-cv-01913-LHK, 2015 WL 8477918, at *8 (N.D. Cal. Dec. 9, 2015) (citing *Escobar v. Whiteside Const. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008)).

> **B.**     **Analysis**
>
>     **1.**     **The Notice-Stage Standard Applies**

Defendant contends that the stricter "second tier" scrutiny is warranted and should apply in this case because substantial discovery and litigation has occurred.  Dkt. 76 at 14.  Specifically, Defendant indicates that the parties have "propound[ed] interrogatories, document requests and requests for admissions, produc[ed] thousands of pages of documents and depos[ed] six individuals" and litigated a motion to dismiss and a motion for partial summary judgment.  *Id.*; Dkt. 76-1 Declaration of Michael M. Freeland ¶ 3.  Further, Defendant argues that the Court's extension of time to conduct further discovery has elapsed.  Dkt. 76 at 14.  Plaintiff argues that the "first tier" scrutiny should apply.  Dkt. 77 at 2.  Plaintiff contends that discovery is not yet closed, as the Court's previous order set a deadline for pre-class certification fact discovery.  *Id.* at 3.  Further, Plaintiff contends that "[i]f certification is granted, then discovery would resume, including fact discovery and expert discovery."  *Id.*

In *Coates*, the court reasoned that courts in this Circuit "routinely reject defendants' requests to apply heightened scrutiny before the close of discovery and hold that the first-stage analysis applies until the close of discovery."  2015 WL 8477918, at *7.  "[S]kipping to the second-stage standard not only requires the court to evaluate an incomplete factual record — it

United States District Court
Northern District of California

United States District Court
Northern District of California

interferes with the future completion of that record." *Id.* Here, while some discovery has been conducted, the Court agrees with Plaintiff's assertion that discovery has not been completed. *See Campbell*, 903 F.3d at 1117 ("Decertification . . . comes *after relevant discovery is complete . . .*") (emphasis added); *Rivera*, 2017 WL 3267540, at *3 ("Once discovery is complete, and the case is ready to be tried, the party opposing collective action certification may move to decertify the collective action.") (citation omitted). Defendant may move to decertify the class after discovery is closed. Further, no formal solicitation has been sent to potential class members. Courts in this Circuit have reasoned that bypassing the notice-stage "[may] deprive some plaintiffs of a meaningful opportunity to participate." *Coates*, 2015 WL 8477918, at *7 (citation omitted). "Measured against these dangers, delaying the second stage analysis risks little harm to defendant, who will be free to move for decertification once the factual record has been finalized and the time period for opting in has expired." *Id.* (internal quotation marks and citation omitted). Accordingly, the Court finds that the notice-stage standard applies in this case.

### 2. "Similarly Situated"

As noted above, Plaintiff seeks certification of "[a]ll hourly workers residing in Arizona who traveled to remote job sites in California; [a]ll hourly workers residing in Arizona who were not paid for loading time at the Haxton yard" from November 21, 2015 to the present. Dkt. 74 at 6-8. Plaintiff argues that he satisfies the "similarly situated" standard under the "first tier" scrutiny. Dkts. 74 at 15; 77 at 3. The Court turns to the two claims in turn below.

#### a. Travel Time Claims

Defendant contends that Plaintiff's prospective collective class members are dissimilar because they are subject to different company practices and procedures regarding their work sites commutes and have different work and commute experiences. Dkt. 76 at 15-16, 23. Defendant argues that the Concrete Division work crews would often opt to meet and leave from the Haxton yard on the Company trucks and were allowed to place their tool/belongings on the company truck. *Id.* at 15-16. In contrast, Masonry employees would usually opt to drive directly to the California work site, did not ride on the departing Company trucks from the yard, and did not place their tools on the trucks. *Id.* Further, Defendant contends that the separate divisions did not

1    necessarily work together at the same times or locations and did not travel to their respective job

2    sites together.  *Id.* at 16.  Additionally, Defendant contends that Plaintiff provides no signed

3    declarations other than his own, guesses the class size based on turnover, provides no evidence

4    that employees met at the yard before traveling to California, and provides no records for his site

5    work hours, cars he rented for work, and  his travel time for the California projects.  *Id.* at 14-15.

6          Plaintiff contends that the putative collective class meets the initial threshold for

7    certification.  Dkt. 74 at 15.  Plaintiff argues that Haxton has a "uniform policy" of not paying

8    regular field workers for travel time, which is evidenced in written discovery, depositions,

9    workers' declarations, and Defendant's opposition.  *Id.*; Dkt. 77 at 3.  Plaintiff contends that the

10   evidence supports the "uniform policy" because it shows that the workers would meet at the

11   Haxton yard, load trucks at the yard, and then travel to remote job sites.  Dkt. 77 at 3.

12         As a preliminary matter, the Court reiterates that it is applying the notice-stage standard to

13   determine whether Plaintiff satisfies FLSA's "similarly situated" requirement for the reasons set

14   forth above.  Defendant argues that in *Rivera*, the Court determined that even when applying the

15   "more lenient first-step analysis," Plaintiff did not satisfy his burden of showing that conditional

16   certification of the putative collective action is appropriate.  2017 WL 3267540, at *5.  The court

17   stated that the plaintiff did not identify a "single decision, policy, or plan" and failed to provide

18   any evidence that anyone but plaintiff worked unpaid overtime or that whatever decision, policy,

19   or plan exists extended to all defendants and their dealerships.  *Id.* (citing *Kress v.*

20   *PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal. 2009)).

21         The Court does not find *Rivera* persuasive here.  In contrast to *Rivera*, Plaintiff asserts a

22   "single decision, policy, or plan" — Haxton does not pay its regular field workers for travel time.[1]

23   Dkt. 74 at 15.  Significantly, this practice is acknowledged by key defense witnesses Mr. Haxton,

24   Ms. Reed, and Mr. Lopez.  Dkts. 74-2 Deposition of Steve Haxton ("Haxton Depo.") 13:11-13;

25   74-2 Deposition of Cassandra Reed ("Reed Depo.") 61:13-15, 64:2-18, 66:5-7, 71:11-15; 74-2

26

27   _____

28   [1] If an hourly worker drove a Haxton truck to a job site, they would have been paid for travel hours.  Dkt. 74-2 Deposition of Steve Haxton ("Haxton Depo.") 14:2-5.  However, Plaintiff alleges Haxton's "normal practice" was to not pay for travel time.  Dkt. 74 at 8 n.1.

United States District Court
Northern District of California

United States District Court
Northern District of California

Deposition of Gabriel Rosales Lopez ("Lopez Depo.") 23:13-17, 36:19-23.  Plaintiff attests to the practice as well.  Dkts. 74-2 Deposition of David Jimenez ("Jimenez Depo.") 56:13-57:21, 89:25-90:3; 74-4 Declaration of David Jimenez ("Jimenez Decl.") ¶¶ 5, 7-8.  Further, unlike the plaintiff in *Rivera* who could provide no evidence that any decision, policy, or plan extended to all defendants and their dealerships, Plaintiff in this matter is a percipient witness who personally observed and experienced meeting with other workers at the Haxton yard before traveling to various job sites without pay for travel time.  *See Hernandez v. Dutton Ranch*, No. 19-cv-00817-EMC, 2020 WL 1274908, at *2 (N.D. Cal. Mar. 17, 2020).

Further, there is documentary evidence of travel time incurred when the employees went to California job sites.  Plaintiff presents an index of specific California job sites (Dkt. 74-2 Exhibit ("Ex.") G Job Sites) and a list of the job site codes to identify each job site (Dkt. 74-2 Ex. H Job Site Codes).  Dkt. 74 at 12.  These codes appear on the payroll records for each worker.  *Id.*; Reed Depo. 20:3-11; 22:8-15; 23:19-28:19.  Additionally, the foremen collected hours from the field workers and filled out a daily hour sheet and a weekly travel time sheet.  Dkt. 74 at 13; Reed Depo 34:3-36:15.  From these documents, it appears that Plaintiff can calculate unpaid travel hours for himself and others.  *Id.* at 13.

The Court does not find Defendant's arguments regarding the distinctions between the Concrete and Masonry workers to be persuasive at this stage of the litigation.  While Defendant presents evidence that there may be distinctions between the two divisions, the putative collective action members are alike with regard to a material aspect of their litigation:  employees, whether Concrete or Masonry workers, who traveled to remote job sites in California may be entitled to compensation.  To prove his claim, Plaintiff puts forth three theories of recovery, arguing that one or more cover all affected employees. Dkt. 74 at 17-18.  First, Plaintiff argues that "work began when Plaintiff and his coworkers arrived at the Haxton yard" because "they had to bring their tools and equipment to the yard to transport them on company trucks."  *Id.* at 18.  Second, Plaintiff asserts that their overnight work is compensable under 29 C.F.R. § 785.39, which states that "[t]ravel away from home is clearly worktime when it cuts across the employee's workday."  *Id.* at 16, 18.  Third, Plaintiff argues that the travel time is "all in a day's work" *Id.* (citing 29 C.F.R. §

785.38).  At the least the second and third theories would cover all workers, regardless of the distinctions Defendants call out as to the Masonry Division.  The Court is also not persuaded by Defendant's argument that the two divisions did not always work together at the same times or locations and did not travel to their respective job sites together.  Individualized issues do not defeat preliminary certification.  *See Hernandez*, 2020 WL 1274908, at *2.  At this initial stage, the Court finds that Plaintiff has presented plausible evidence that the putative collective action members are "similarly situated."  *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 949 (9th Cir. 2019) ("These are similar issues of law or fact material to the disposition of their FLSA claims, thus making plaintiffs similarly situated.") (internal quotation marks and citation omitted).

### b.        Loading and Unloading Time Claims

Defendant contends that because the Masonry Division workers and some Concrete Division workers do not travel to the Haxton yard when commuting to a California project, Plaintiff's assertion that Haxton has a "uniform practice" of not paying for loading and unloading time is inaccurate.  Dkt. 76 at 23.  Defendant also argues that workers were "typically not required to load anything."  *Id.*  Defendant also contends that this Court lacks subject matter jurisdiction based on the claims as described in Plaintiff's First Amended Complaint.  *Id.* at 24.  Defendant argues that Plaintiff's loading and unloading claims are de minimus and/or voluntary.  *Id.* at 25.  Finally, Defendant argues that this claim would be better served on an individual basis in an Arizona state court rather than as a collective action here because all parties reside in Arizona and an Arizona state court would "presumably be more familiar with the potential application of Arizona state law."  *Id.* at 26-27.

Plaintiff contends that Haxton admits it did not pay its workers — any workers — for loading time at the Haxton yard before and after work trips.  Dkt. 74 at 16.  Plaintiff contends that the evidence supports this "uniform policy" because it shows that the workers would meet at the Haxton yard, load trucks at the yard, and then travel to remote job sites.  Dkt. 77 at 3; Haxton Depo. 50:4-9; Lopez Depo. 26:1-17, 64:17-21; Jimenez Depo. 29:17-22, 69:9-12, 100:8-10, 100:25-101:6.  Plaintiff also argues that he pled claims for "reporting to a meeting place to receive

1    instructions or to perform other work there, to pick up and to carry tools."  Dkt. 77 at 5.  Further,

2    Plaintiff contends that his claim for loading and unloading time came out during discovery when

3    Mr. Lopez and Mr. Haxton testified that workers would load trucks and tools and materials before

4    heading to job sites.  *Id.*

5         As reasoned above, the Court does not find Defendant's assertion that Plaintiff's proposed

6    collective class has dissimilar factual and employment settings to be persuasive at this stage of the

7    litigation.  Plaintiff is asserting that he and the putative collective action members are "similarly

8    situated" with regard to a material aspect of their litigation — that they were not paid for loading

9    and unloading time at the Haxton yard, which is an "integral part of and indispensable to their

10   principal activities," pursuant to 29 C.F.R. § 785.38.  Dkts. 74 at 19; 77 at 5.  Plaintiff asserts that

11   "[t]he loading time would have occurred immediately before the travel and immediately after and

12   can be categorized as 'part of the day's work.'"  Dkt. 77 at 5.  "[T]he notice-stage is not the

13   appropriate time to evaluate the merits of [Plaintiff's] claim."  *Coates*, 2015 WL 8477918, at * 11.

14   Accordingly, Defendant's argument that Plaintiff's loading and unloading claims are de minimus

15   and/or voluntary does not undermine Plaintiff's assertion that they were not paid for loading time

16   at the Haxton yard due to Haxton's policies.  The evidence provided by Plaintiff is sufficient to

17   show a "single decision, policy, or plan" that affects all of the putative collective action members.

18   *See Kress*, 263 F.R.D. at 629.

19        Defendant cites to *Smith v. Aztec Well Servicing Co.* in support of its subject matter

20   jurisdiction argument, where plaintiffs failed to allege anything in the complaint "to support a

21   claim based on time spent in pre-shift safety meetings at the well site or in changing into and out

22   of specialized safety gear."  462 F.3d 1274, 1284 (10th Cir. 2006); Dkt. 76 at 24.  In the First

23   Amended Complaint, Plaintiff alleges that they had to gather tools before going to the job sites.

24   Dkt. 24 ¶¶ 16, 41, 42.  The Court finds that this claim is sufficient under notice pleading in the

25   First Amended Complaint.

26        Further, the Court finds that exercising pendent jurisdiction over the FLSA claim for the

27   hourly workers residing in Arizona who were not paid for loading time at the Haxton yard is

28   appropriate here.  *See Chavez v. Stellar Management Group VII LLC*, No. 19-cv-1353-JCS, 2020

United States District Court
Northern District of California

WL 4505482 at *10 (N.D. Cal. Aug. 5, 2020) (determining pendent jurisdiction would "best serve the interests of judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties" and "the goals that the Ninth Circuit articulated in adopting pendent jurisdiction comport with the goals of the FLSA") (internal quotation marks and citation omitted). Additionally, while damages may inevitably be individualized, "just as the need for individualized damage calculations is insufficient to defeat Rule 23 certification, individual damages amounts cannot defeat collective treatment under the more forgiving standard for FLSA collective certification." *Senne*, 934 F.3d at 950 (citing *Campbell*, 903 F.3d at 1117). The Ninth Circuit indicates that "because the FLSA is a remedial statute, it must be interpreted broadly." *Id.* (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999)). Accordingly, at this initial stage, the Court finds that Plaintiff has presented plausible evidence that the putative collective action members are "similarly situated."

## V.     CLASS CERTIFICATION

Plaintiff seeks certification of a class of all Haxton hourly workers residing in Arizona who incurred lodging expenses for work in California from November 21, 2014 to the present. Dkt. 74 at 7-8.

### A.     Legal Standard

The Court has the discretion to grant or deny class certification under Federal Rule of Civil Procedure 23. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). "Where appropriate, the district court may redefine the class, *see Penk v. Oregon State Bd. of Higher Educ.*, 816 F.2d 458, 467 (9th Cir.1987), may excise portions of a plaintiffs [sic] class allegations, and may even decertify the class." *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005), *as recognized in B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 974 (9th Cir. 2019).

Rule 23 is a two-prong test. First, Rule 23(a) provides that a class may only be certified if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

United States District Court
Northern District of California

12

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy." If all four prerequisites of Rule 23(a) are satisfied, the Court must then turn to the requirements of Rule 23(b). Rule 23(b) requires the plaintiff to "satisfy through evidentiary proof at least one of Rule 23(b)'s provisions." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013). In this case, Plaintiff seeks certification pursuant to Rule 23(b)(3), which permits certification of cases where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of proof in demonstrating that it has satisfied all four Rule 23(a) prerequisites and that their class lawsuit falls within one of the three types of actions permitted under Rule 23(b). *Zinser*, 253 F.3d at 1186. The failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975). Consequently, when considering whether to certify a class under Rule 23, district courts must perform "a rigorous analysis" to ensure that Rule 23(a) has been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). This "rigorous analysis" may require a court "to probe behind the pleadings before coming to rest on the certification question." *Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 560 (N.D. Cal. 2015) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). A court's analysis of the certification question "will entail some overlap with the merits of the plaintiff's underlying claim," and "a district court must consider the merits if they overlap with the Rule 23(a) requirements." *Wal-Mart*, 564 U.S. at 351; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Ellis*, 657 F.3d at 983. When resolving such factual disputes in the context of a motion for class certification, district courts must consider "the persuasiveness of

the evidence presented." *Id.* at 982.  "Because the early resolution of the class certification question requires some degree of speculation, however, all that is required is that the Court form a 'reasonable judgment' on each certification requirement.  In formulating this judgment, the Court may properly consider both the allegations of the class action complaint and the supplemental evidentiary submissions of the parties." *In re Citric Acid Antitrust Litig.*, No. 95–1092, C–95–2963 FMS, 1996 WL 655791, at *2 (N.D. Cal. Oct. 2, 1996) (citing *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975)).

> ### B.      Analysis
>
> #### 1.      Rule 23 (a) Requirements
>
> ##### a.      Numerosity

Rule 23(a) requires each proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23.  Rather, the rule "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  A class or subclass with more than forty members "raises a presumption of impracticability [of joinder] based on numbers alone." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152-53 (N.D. Cal. 2015).  Conversely, fewer than twenty proposed class members generally does not show impracticability of joinder. *See Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 890 (N.D. Cal. 2015).

For proposed classes that fall into the "gray area" between twenty and forty class members, "courts must consider factors other than class size," including: "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." *Sandoval*, 309 F.R.D. at 562.  The third and fourth factors, which are often analyzed together, include consideration of "the economic status of the class members; the size of their claims; and other relevant factors, such as confinement and mental handicaps." *Lil' Man in Boat, Inc. v. City and Cnty. of San Francisco*, No. 17-cv-00904-JST, 2019 WL 125905, at *5 (N.D. Cal. Jan. 8,

2019) (citing 32B Am. Jur. 2d Federal Courts § 1506). "In analyzing these factors, a court may make common-sense assumptions and reasonable inferences." *The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust*, No. 15–cv–0224–YGR, 2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016) (citations omitted).

Plaintiff contends that "[t]he numbers are above the threshold for numerosity, as the class size will be 40 to 50 members." Dkt. 74 at 22. Plaintiff contends that Haxton had a policy of not paying for regularly hourly field workers' lodging on overnight work trips. Dkt. 77 at 6. In support of the numerosity argument, Plaintiff again points to acknowledgements by key defense witnesses. Mr. Steve Haxton, the President of Haxton, indicates that Haxton's policy for overnight jobs was to pay for foremen's lodging, but not for non-foreman workers.[2] Haxton Depo. 32:14-20, 33:5-9. Foremen would have discretion to decide whether to stay overnight and Mr. Haxton would approve the requests. *Id.* at 31:24-32:6, 45:23-46:22. Ms. Cassandra Reed, Office Manager for Haxton, confirms that Mr. Haxton would approve foremen's requests to stay at a hotel on overnight jobs, and Haxton directly paid for the hotels for the foremen. Reed Depo. 60:9-12, 68:11-18, 73:3-74:9. Mr. Gabriel Rosales Lopez, Mr. David Jimenez, and Mr. Sergio Ruiz Duarte also confirm that Haxton paid foremen's hotels during overnight jobs, and non-foremen employees would either stay with the foreman or get a room in groups and pay for it themselves. Lopez Depo. 17:8-18:2; Jimenez Depo. 99:7-20; Deposition of Sergio Ruiz Duarte ("Duarte Depo.") 10:17-23; Jimenez Decl. ¶ 6. Finally, Plaintiff points to Ms. Reed's deposition, where she stated that Haxton's full-time field workers based in Arizona fluctuated from 20-40 employees at any time from 2014 to the time of her deposition. Reed Depo. 13:24-14:17.

Plaintiff also points to business records to support the contention that numerosity is satisfied, including an index of specific California job sites, the job site acronym list by code, and payroll summaries for each putative class member. Dkt. 74-2 Exs. F, G, and H; Reed Depo. 20:3-11, 21:2-16, 21:23-22:15, 27:2-9. At the hearing, Plaintiff argued that while he did not receive

---

[2] Mr. Haxton and Ms. Reed both indicated that Haxton began paying for hotels for non-foremen at some job sites as an incentive when it was hard to find workers. Haxton Depo. 38:6-40:4; Reed Depo. 66:8-25, 67:7-12.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    hotel receipts in discovery, when foremen would make the decision to stay overnight, the non-

2    foremen hourly workers would follow that decision.  *See* Dkts. 74 at 28; 77 at 7 (citing Haxton

3    Depo. 31:24-32:1-6).  Additionally, Plaintiff argues that the weekly and daily time sheets would

4    also show the attendance at the job sites.  Dkts. 74 at 26; 77 at 7.  In sum, these records taken

5    together will show the number of employees who incurred hotel expenses at those overnight job

6    sites.  Dkt. 74 at 27.

7          Defendant argues that Plaintiff has failed to introduce evidence of a numerous class.  Dkt.

8    76 at 28.  At the hearing, Defendant contended that there is essentially no evidence of Plaintiff

9    specifically incurring any hotel costs.  Further, Defendant argues that Plaintiff, as a Concrete

10   Division worker, cannot represent employees in the Masonry Division because that division

11   handles travel issues differently.  *Id.*  Defendant contends that "[m]asonry workers typically

12   shared a hotel room; two to a room" while "[c]oncrete workers shared 3-4 to [sic.] room."  *Id.*

13   Defendant concludes that Plaintiff "can only truly represent the 24 Concrete Division workers."

14   *Id.*

15         In his reply, Plaintiff argues that Defendant is creating a false division between the

16   Masonry and Concrete workers because the policy to not pay for regular hourly field workers'

17   lodging on overnight work trips was an "across the board" policy.  Dkt. 77 at 6.  The Court agrees,

18   as Plaintiff is alleging Haxton has a policy of not paying for the hourly field workers' lodging on

19   overnight work trips.  Indeed, Mr. Haxton's deposition testimony discussing this policy does not

20   distinguish between the Masonry and Concrete workers.  Haxton Depo. 33:5-9.

21         Given the evidence that Plaintiff has presented, the Court disagrees with Defendant's

22   assertion that there is essentially no evidence Plaintiff incurred any hotel costs.  The depositions

23   indicate that Haxton's policy was to not pay for the non-foreman employees' hotel rooms.  Haxton

24   Depo. 32:14-20, 33:5-9.  Several employees testified that non-foremen employees did not get

25   reimbursed for their hotel expenses.  Lopez Depo. 17:8-18:2; Jimenez Depo. 99:7-20; Duarte

26   Depo. 10:17-23; Jimenez Decl. ¶ 6.  Further, while Plaintiff has the burden of demonstrating there

27   are in fact sufficiently numerous parties, Defendant itself indicates that 24 Concrete Division

28   employees and 34 Masonry Division employees may have incurred lodging expenses for work in

California.  Dkt. 76 at 28; *see Wal-Mart Stores, Inc.*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.").  With the evidence proffered by Plaintiff, the Court finds that Plaintiff can show by a preponderance of the evidence that the number of employees meet an acceptable threshold to satisfy the numerosity requirement.  *Lil' Man in Boat, Inc.*, 2019 WL 125905, at *4 (reasoning that "courts lacking hard evidence on class size may make common sense assumptions to support a finding that joinder would be impracticable") (internal quotation marks and citation omitted).  Accordingly, the Court finds that this class satisfies Rule 23(a)(1).

### b.    Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy this requirement, a common question "must be of such a nature that it is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.  "What matters to class certification is not the raising of common questions . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).  "In other words, Plaintiffs must have a common question that will connect many individual [] decisions to their claim for class relief." *Ellis*, 657 F.3d at 981.

Commonality is satisfied where a plaintiff challenges a system-wide practice or policy that affects all putative class members. *Armstrong*, 275 F.3d at 868. If there is no evidence that the entire class was subject to the same practice or policy, however, there is no question common to the class. *Ellis*, 657 F.3d at 983.  Additionally, if a class action can only proceed to trial in the form of a myriad of mini-trials, class certification must be denied. *See, e.g.*, *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 484 (N.D. Cal. 2017).

Defendant contends that Plaintiff "fails to provide evidence of a single violation of § 2802." Dkt. 76 at 29.  Specifically, Defendant argues that Plaintiff has not provided a single instance where he incurred a hotel cost other than his own testimony. *Id.* at 30.  Additionally,

United States District Court
Northern District of California

17

1    Defendant contends that there are no common questions of fact and that there are individualized

2    factual issues including whether putative class members incurred expenses and the amount spent,

3    whether lodging expenses were necessary, and federal enclave issues.  *Id.* at 30-31.

4           As stated in Section V.B.1.a., Plaintiff has presented evidence from multiple employees

5    who stated that Haxton did not pay for hotels for its field workers and they had to pay their own

6    hotel expenses.  Significantly, Plaintiff points out that he "only seeks damages on behalf of the

7    class for hotel expenses incurred when there was an overnight stay as dictated by the foreman,

8    which is evidenced by the foreman's own stay in a hotel, and the timecards of class members

9    showing multiple days worked in a row at a remote worksite."  Dkt. 77 at 7.   Additionally, the

10   Court agrees with Plaintiff that there is a common question of law or fact: whether or not Haxton's

11   policy of not paying the non-foreman employees' hotel expenses during overnight jobs violated

12   Labor Code § 2802.  *See Armstrong*, 275 F.3d at 868 (stating that "individual factual differences

13   among the individual litigants or groups of litigants will not preclude a finding of commonality").

14   "The existence of even one significant issue common to the class is sufficient to warrant

15   certification."  *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D.

16   334, 346 (N.D. Cal. 2008). Accordingly, the Court finds that the commonality requirement of Rule

17   23(a) has been met.

18                              **c.      Typicality**

19          To satisfy typicality, plaintiffs must establish that "the claims or defenses of the

20   representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

21   "The purpose of the typicality requirement is to assure that the interest of the named representative

22   aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

23   1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

24   "The test of typicality is whether other members have the same or similar injury, whether the

25   action is based on conduct which is not unique to the named plaintiffs, and whether other class

26   members have been injured by the same course of conduct."  *Id.* (quoting *Hanon*, 976 F.2d at

27   508).  Typicality and commonality have similar requirements and often tend to merge.  *See*

28   *Californians for Disability Rights*, 249 F.R.D. at 346.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant argues that Plaintiff's claims fail to meet the typicality requirement because

2    Plaintiff is not a member of the Masonry Division who "performed different work, commuted

3    directly to/from work sites and did not typically ride in Company trucks."  Dkt. 76 at 31.

4    Defendant further contends that because Plaintiff justifies his reimbursement of lodging expenses

5    "in part on the fact that such costs were the result of travel which commenced from the Haxton

6    yard, his claims are atypical of Masonry workers."  *Id.* (emphasis omitted).  Further, Defendant

7    again argues that Plaintiff has not provided any proof of a single instance where he incurred a

8    hotel costs other than his own testimony.  *Id.*

9    The Court finds Defendant's argument distinguishing the two divisions to be unpersuasive,

10   as where employees met before going to various job sites or what type of work they did not

11   have bearing with the proposed class here, which includes Arizona workers who incurred lodging

12   expenses in California while working on overnight jobs.  Further, as stated above under Section

13   V.B.1.a., Plaintiff has presented evidence from multiple employees that Haxton did not pay or

14   reimburse for hotels for its field workers.  Plaintiff's claims regarding lodging expenses are typical

15   of those of the class because their claims arise out Defendant's alleged practice of not paying for

16   their lodging expenses.  Accordingly, the Court finds that the typicality requirement has been met.

### d. Adequacy

18   To satisfy Rule 23(a)(4), Plaintiffs must demonstrate that they will "fairly and adequately

19   protect the interests of the class."  When considering the adequacy of proposed class

20   representatives, courts must examine "the qualifications of counsel for the representatives, an

21   absence of antagonism, a sharing of interests between representatives and absentees, and the

22   unlikelihood that the suit is collusive."  *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1995)

23   (citation omitted).  The Supreme Court has "repeatedly held that a class representative must be a

24   part of the class and possess the same interest and suffer the same injury as the class members."

25   *Gen. Tel. Co.*, 457 U.S. at 156 (citations omitted).  However, "[a]s a general rule, disapproval of

26   the action by some class members should not be sufficient to preclude a class action on the ground

27   of inadequate representation*." Californians for Disability Rights*, 249 F.R.D. at 348 (quoting 1

28   Newberg on Class Actions § 3:30).

Defendant against attempts to distinguish Masonry Division employees from the Concrete Division workers, arguing that Plaintiff cannot fairly and adequately protect the interests of the Masonry Division workers because they "perform different tasks and, of note, do not necessarily work together at the same times or locations and normally do not commute to their respective job sites together." Dkt. 76 at 32. The Court does not find that the distinctions between the two divisions would hinder Plaintiff from fairly and adequately protecting the interests of the class.

Further, the Court finds Plaintiff's attorneys are experienced class action attorneys and are adequate class counsel.

"Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights Inc.*, 249 F.R.D. at 349 (citations omitted). Defendant has failed to rebut this presumption. Accordingly, the Court finds that the adequacy of representation requirement is met.

### e. Conclusion

In sum, the Court finds that Plaintiff has satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). The Court also finds that class counsel is adequate.

### 2. Federal Rule of Civil Procedure 23(b)(3)

Class actions must also satisfy one of three enumerated categories. *See* Fed. R. Civ. P. 23(b)(1)-(3). Here, Plaintiff seeks to certify under Rule 23(b)(3). A class may be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Here, resolving the claims regarding Haxton's failure to reimburse necessary expenditures, specifically, the lodging expenses, as a class will be far more efficient than resolving such claims in individual lawsuits. The Court concludes that a class action is superior to other methods for adjudicating this dispute.

## VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for conditional certification of a collective action under the FLSA and class certification under Rule 23.

United States District Court
Northern District of California

1   The Court conditionally certifies the following collective actions: "All hourly workers

2   residing in Arizona who traveled to remote job sites in California from November 21, 2015 to the

3   present;" "All hourly workers residing in Arizona who were not paid for loading time at the

4   Haxton yard from November 21, 2015 to the present."  The Court **ORDERS** the parties to meet

5   and confer and submit a joint proposed notice by no later than **February 26, 2021**.  If the parties

6   are unable to agree on a specific issue and/or language, the parties shall, in a joint submission,

7   identify the dispute and provide each party's position on the issue and/or proposed language.  The

8   Court also **ORDERS** Defendant to produce to Plaintiff's counsel the list of potential plaintiffs

9   within **21 days** of the date of this Order.

10   The Court certifies the following class: "All Haxton hourly workers residing in Arizona

11   who incurred lodging expenses for work in California from November 21, 2014 to the present."

12   Plaintiff David Jimenez is appointed as class representative and Granahan Law, P.C. is appointed

13   as class counsel.

14   The Court sets a further case management conference for **March 9, 2021 at 9:30 a.m.** An

15   updated joint case management statement including the Parties' proposed ADR, pre-trial, and trial

16   deadlines is due **March 2, 2021**.

17   **SO ORDERED.**

18   Dated: February 11, 2021

19

20

21   SUSAN VAN KEULEN
     United States Magistrate Judge

22

23

24

25

26

27

28

United States District Court
Northern District of California