Conor Granahan, Bar No. 240756
GRANAHAN LAW, P.C.
235 Montgomery Street, Suite 440
San Francisco, CA  94104
T: 415-830-3325
F: 415-504-1957
Email: conor@granahanlegal.com

*Attorneys for Plaintiff*
*DAVID JIMENEZ on behalf of himself,*
*and all others similarly situated,*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JIMENEZ, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HAXTON MASONRY, INC. and DOES 1-100, Defendants. | CASE NO.  5:18-cv-07109-SVK<br><br>**MOTION TO APPROVE CLASS ACTION SETTTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><br>Date:  January 25, 2022<br>Time:  10:00 am<br>Judge:  Hon. Susan van Keulen<br>Courtroom:  6 |

## I.    INTRODUCTION

This motion is to request preliminary approval of the settlement reached between the parties. The Settlement Agreement is attached as Exhibit 1 to the Declaration of Conor Granahan. It includes a proposed notice and a proposed claim form as exhibits. The settlement of $150,000.00 is fair, reasonable, and adequate under the circumstances described below.

## II.    STATEMENT OF FACTS

Initially filed on November 21, 2018, this is a wage and hour class action brought on behalf of David Jimenez, a former employee of Defendant Haxton Masonry, Inc., ("Defendant") alleging various California state law and Fair Labor Standards Act ("FLSA") violations.

On February 11, 2021, the Court issued an Order Granting Plaintiff's Motion for Collective and Class Certification. Dkt. 84. Therein, the Court granted Plaintiff's motion for conditional certification of a collective action under the FLSA and class certification under Rule 23. The Court conditionally certified the following collective actions:

(1) "*All hourly workers residing in Arizona who traveled to remote job sites in California from November 21, 2015, to the present*;" and,

(2) "*All hourly workers residing in Arizona who were not paid for loading time at the Haxton yard from November 21, 2015, to the present*." Dkt. 84.

The Court further certified the following Rule 23 class: "*All Haxton hourly workers residing in Arizona who incurred lodging expenses for work in California from November 21, 2014, to the present.*" Dkt. 84.

## III.    ANALYSIS

**1. The Settlement Details, Class Recovery, Allocation Plan**

The settlement was the product of good faith, arms-length negotiations. The parties attended three mediation sessions with respected mediator Michael Roberts of ADR Services, Inc. on November 19, 2019, July 21, 2020, and September 20, 2021. The parties reached an initial agreement and signed a memorandum of understanding immediately following the third mediation session.

A longform Settlement Agreement followed, which is attached as Exhibit 1. The total settlement and anticipated allocation are as follows:

- Total Settlement: **$150,000.00**

- Attorney Fees: Counsel will seek fees of 25 percent of the total settlement ($37,500).

- Litigation Costs: ($17,500.00)

- Settlement Administrator Costs ($5,000.00)

- PAGA allocation of $2,500.00 ($1,875.00 to state, $625.00 back to class)

- Enhancement Payment to Plaintiff Jimenez: $10,000.00

- Net Settlement Amount: **$78,125.00**

The Settlement Agreement allocates 30 percent ($23,437.50) of the net settlement amount to the Collective Action claims, which are for the FLSA opt-in claims. There are 15 opted-in members to the Collective Action.

The Settlement Agreement allocates 70 percent ($54,687.50) of the net settlement amount to the Class Action claims, which are for the entire class of 59 potential members.

The distribution to each individual is based on the number of workweeks in California, which will be calculated by adding up the number of days worked in California, divided by 7, then apportioned pro rata. This is the same for the collective and class allocations. This distribution accounts for the actual time worked in California to value the claims for each individual.

Defendant Haxton will submit the workweeks to the Settlement Administrator, who will distribute the claim form with the workweeks to each class member. Class members will have the right to dispute their allotment of workweeks through the Settlement Administrator. The parties will make best efforts to resolve the claims.

After receiving the claim forms back, the Settlement Administrator will make the distributions. If those who submit claims do not cash their checks within 180 days, the money will be sent to the State Controller's Office, Unclaimed Property Division, in the name of the individual who did not cash their check.

## 2. The Settlement Classes and Claims Released

The settlement classes will be the same as the certified collective and class members. There are 15 opted-in members of the collective action and there are 59 potential members of the class action (there was one opt-out out of the 60 eligible workers).

The state claims alleged in the operative complaint (or which reasonably could have been alleged therein) will be released by all class members. The federal wage claims which were alleged in the Lawsuit (or which reasonably could have been alleged therein) will be released for the collective action members who opted in. Those who did not opt in will not have their claims waived.

The claims released will be broader than the claims certified. The release contains all the claims that are in the complaint. There were only two claims certified: FLSA claims and Labor

Code §2802 claims for hotel reimbursements. The differences are appropriate because Defendant Haxton wants to resolve the entire matter, not just the certified claims.

The California wage claims released are similar and duplicative of the certified FLSA claims and could constitute a double recovery if presented with the FLSA claims at trial.

Plaintiffs has not valued the released claims in the same way as the certified claims and this decision weighed into the fact that these claims are being released in the Settlement Agreement.

### 3. Release of PAGA Claims

The parties have allocated $2,500.00 to the PAGA claims, which is 1.6 % of the settlement. The Court may employ a sliding scale in evaluating the adequacy of a PAGA claim to assess the value of the settlement as a whole. The statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself. *Viceral v. Mistras Grp., Inc.* (N.D. Cal. Oct. 11, 2016) 2016 WL 5907869, at *9. *See also Turrieta v. Lyft, Inc.* (Los Angeles Superior Ct.), Case No. BC714153; *Price v. Uber Techs, Inc.* (Los Angeles Superior Ct.) Case No. BC55412.

Here, the Court should approve the PAGA allocation. Plaintiff Jimenez filed suit just before one year of leaving the company and no longer works there. His ability to collect PAGA penalties, with a one-year statute, is limited, whereas the FLSA and California state law claims go back to 2014. Moreover, the PAGA claims are limited by the Order granting Defendant's Motion for Summary Adjudication. Dkt. 69. The following bases, where a significant amount of work was performed, are excluded from PAGA claim: Camp Pendleton, Navy Base Coronado,

4

Naval Base Point Loma, Miramar, Seal Beach, and Point Mugu.[1] A 1.6 % allocation is in line with other wage and hour settlements as indicated above.

## 4. Anticipated Recovery if Plaintiff Prevailed

When evaluating the value of the claims, ballpark valuations are permissible, especially when reached after mediated negotiations among non-collusive parties. *In re Toyota Motor Corp. Unintended Acceleration Mtktg., Sales Practices & Products Liab. Litig.* 2013 WL 3224585, *& (C.D. Cal. June 17, 2013).

Factors making recovery difficult are as follows. First and foremost, Defendant Haxton's financial issues leave the issue of whether a verdict could be satisfied. See Declaration of Greenwell, ¶ 2-4, Ex. 3. To bankrupt or severely hamper the financial condition of the company would not help the current employees, many of whom are class members retain employment.

Second, the FLSA claims for the Collective Action had issues with the Portal-to-Portal Act, as identified in Defendant's Opposition to Class Certification. The bulk of the FLSA claims were for travel time. Under the Portal to Portal Act, Plaintiff could show that travel time should have been compensable in two ways: 1) if travel kept a worker away overnight, then the travel time would only be compensable if it was during regular work hours on the non-work travel day; and 2) if travel was in the same day, it needed to be after meeting in the morning to travel and returning to the meeting place at night. Both of these scenarios contained facts in dispute and could have gone Defendants' way after taking depositions of all class members.

---

[1] Defendant Haxton later moved to include Monterey Presidio as a federal enclave, but its motion was denied for procedural reasons. Dkt. 94. The issue has not been litigated on its merits but could fit into the same analysis to exclude PAGA claims.

Third, the loading/unloading time under the FLSA had the same hurdle. If not all the workers had to perform these duties at the beginning of a shift or at the end of a shift, it could limit or defeat the collective claims.

Fourth, the California class claims for Labor Code §2802 hotel reimbursements had difficulties based on the calculation of damages. The documents necessary to prove the claims were minimal. And the class members did appear to share hotel rooms with each other and with the foreman on occasion to limit and to convolute the damages calculation.

Fifth, Defendant was able to limit the California Labor Code §2802 reimbursement claim through the Order granting Motion for Summary Adjudication declaring some of the bases where work was performed as federal enclaves. Dkt. 69. This would limit the ability for the class members to be reimbursed for work at the following bases: Navy Base Coronado and Naval Base Point Loma.[2]

Likewise, the Order Granting Motion for Summary Adjudication limited many of the California wage claims, which would make class certification difficult. Thus, the decision was made to move to certify Collective FLSA claims.

Using the data from discovery and from Defendant during mediation negotiations, Plaintiff is able to estimate the damages as show below. For travel time, Plaintiff has estimated that Haxton ran jobs in California during 259 weeks of the class period. Plaintiff estimates he worked in California one or more days during 152 weeks of his tenure. The locations of the jobs varied and not all travel took place in a way to make it compensable under the FLSA and the Portal to Portal

---

[2] Defendant Haxton later moved to include Monterey Presidio as a federal enclave, but its motion was denied for procedural reasons. Dkt. 94. The issue has not been litigated on its merits but could fit into the same analysis to exclude §2802 claims.

6

Act. And not all weeks were full weeks. Using an average of 6 hours round trip for 50% of the weeks for Plaintiff, that is 76 weeks times 6 hours at California minimum wage, $15.00/hour, is $6,840.00. Using that average for 15 workers, that is $102,600.00. Under the FLSA, the amount owed is doubled as a penalty, which is $205,200.00.

For the hotel expenses, not every job was overnight. Taking the estimated 259 weeks Haxton ran jobs in California, we can also estimate that 50% of them were overnight jobs. Testimony showed that workers split rooms with up to four people, and others shared with foreman. Mr. Jimenez did testify that the workers would split the costs evenly, even if some workers did get free rooms from the foremen.

First, if we take 50% of the 259 weeks, that is 129.5 weeks. Second, we can use a full week of overnight stays, which would be 4 nights. Receipts produced by Haxton show an approximate average cost at $60.00 per night for a hotel. That is $240.00 per week to split up amongst eligible workers. Assuming that 4 workers shared a room, that is $60.00 per week for each worker. Multiplied by 129.5 weeks that is $7,770.00 per average worker, and $458,430.00 for 59 workers.

Using these calculations, the value of the claims can be estimated at $663,630.00. The $150,000.00 settlement represents 22.6 percent of the estimated value.

### 5. Notice and Settlement Administrator

Notice will be largely a duplicative effort of the notice sent regarding the certification of the class. The total Collective Action is comprised of 15 people—Plaintiff and 14 other opt-ins who sent in their forms after receiving notice of the certified class. The California Class size is 59 people. Notice was sent to 60 people by mail and email. All 60 emails went through without

bounce backs. However, 14 of the mailed notices were returned to sender. Only one of those had a new address on file with the postal service. A new notice was sent to him. There was also one opt-out.

The parties have agreed to use Phoenix Class Action Administration Solutions ("Settlement Administrator). The same information used for notice of certification will be provided to the Settlement Administrator and the parties expect similar results. The costs for the Administrator are set to come out of the total settlement amount. The quote for $5,000.00 is attached as Exhibit 2.

### 6. Enhancement Award

The Settlement Agreement includes an enhancement payment of $10,000.00 to Plaintiff Jimenez. The Settlement Agreement also includes a general release of all claims for Plaintiff Jimenez. Mr. Jimenez's participation in the case was integral to its resolution. As he attested in his Declaration in support of class certification he has been involved since 2018. He has contacted counsel regularly for updates. He participated in an in-person mediation by traveling from Yuma, Arizona to San Diego as well as virtual sessions. He sat for his deposition and responded to comprehensive written discovery. Dkt. 74.

### 7. Attorney Fees and Costs

Counsel for Plaintiff will seek an award of attorney fees equal to 25 percent of the total settlement amount. The requested fees of $37,500.00 would constitute a negative multiplier based on the substantial hours worked on this matter. Mr. Granahan's court-approved hourly rate of $500.00 constitutes 75 hours of work. At time of final approval, counsel will move for an order approving the fees and provide a full lodestar evaluation at that time.

The litigation costs are approximately $17,500.00. This is subject to change with filing fees and other costs. A full accounting will be provided at time of final approval and when counsel moves for an order to approve repayment of the litigation costs.

## IV. CONCLUSION

Based on the foregoing, Plaintiff requests that the Court grant preliminary approval of the settlement, approve the Notice to the Collective Action and Class members, and set a date for Final Approval.


DATED: 12/21/2021

GRANAHAN LAW, P.C.

Conor Granahan
Attorney for Plaintiff David Jimenez and all others similarly situated