UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JIMENEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HAXTON MASONRY, INC.,<br><br>　　　　Defendant. | Case No. 18-cv-07109-SVK<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. Nos. 105, 106 |

　　　　Following the Court's preliminary approval, notice to prospective class members, and a fairness hearing, the Court now considers Plaintiffs' unopposed Motion for Final Approval of the Class Action Settlement. Dkt. 105. The proposed class settlement totals $150,000 (the "Maximum Settlement Amount" or "MSA") and includes all monetary benefits and payments to the California Class Members, the enhancement for the Class Representative, Class Counsel's award, Claims Administrator's expenses, Private Attorney General Act ("PAGA") claims, and the employer's share of taxes.[1] Dkt. 98-2, Ex. 1. No objections to the settlement have been filed. Also before the Court is Plaintiffs' unopposed motion for attorneys' fees totaling $37,500, or 25% of the Maximum Settlement Amount, and for reimbursement of litigation expenses totaling $17,000. Dkt. 106. These amounts would be deducted from the MSA of $150,000. Dkt. 98-2, Ex. 1.

　　　　The Court has considered the Parties' submissions, the relevant legal authorities, the record in this case, and the arguments presented at the final fairness hearing. Due and adequate notice having been given of the Settlement, as required by the Preliminary Approval Order [Dkt. 104], the Court having considered all papers filed and proceedings conducted herein, and good cause

---

[1] Capitalized terms are defined in the Settlement Agreement dated December 20, 2021. *See* Dkt. 98-2, Ex. 1.

appearing therefor, the Court GRANTS the motion for final approval of the settlement agreement. The Court also GRANTS the motion for attorney fees and awards the requested amounts in full.

## I. BACKGROUND

### A. Factual Background

Defendant is a concrete and masonry contractor with a main office and work yard in Yuma, Arizona. Dkts. 76 at 8; 76-2 Declaration of Cassandra Reed ¶ 2. From November 21, 2014 to present, Haxton work sites, comprising at least 182 California construction projects, have been primarily located in Southern California. Dkts. 76 at 8; 76-3 Declaration of Cosme Garcia ¶ 5. These construction jobsites have included federal facilities like Marine Corps Base Camp Pendleton and Naval Base Ventura County. Dkt. 59 at 8-9; Dkt. 59-1; Dkt. 65-1. Haxton has two Divisions: Concrete and Masonry. Dkts. 76 at 9; 76-4 Declaration of Jose Aguayo ("Aguayo Decl.") ¶ 2. While Concrete Division employees prepare and construct concrete slabs and footings, Masonry Division employees primarily construct masonry walls and barriers. Dkts. 76 at 9; Aguayo Decl. ¶ 2. During the relevant time period, approximately fifty-nine Haxton field workers resided in Arizona and worked on California jobs, consisting of approximately twenty-four 24 Concrete Division employees and approximately thirty-four 34 Masonry Division employees. Dkt. 76 at 8–9.

Plaintiff David Jimenez worked for Defendant as a concrete finisher between 2013 and 2017. Dkt. 24 ("First Amended Complaint" or "FAC") at ¶ 14.

### B. Relevant Procedural History

Because the procedural history in this case spans four years, the Court only summarizes those rulings relevant to the disposition of this motion. Plaintiff initiated this putative collective and class action in November 2018. Dkt. 1. In the First Amended Complaint, filed in March 2019, Plaintiff pleads violations of the FLSA, violations of the California Labor Code, a PAGA claim, and unfair business practices in violation of Business and Professions Code § 17200 et seq. Dkt. 24. In sum, Plaintiff alleges Haxton failed to pay Arizona hourly workers wages and/or overtime for time spent traveling to job sites in California and loading and unloading tools at the Haxton yard. Plaintiff also alleges Haxton failed to reimburse Arizona hourly workers' lodging expenses incurred during overnight jobs in California.

1	On June 5, 2020, the Court granted Defendant's Motion for Partial Summary Judgment on several of Plaintiff's California state law claims, including Plaintiff's PAGA claim, relating to federal facilities, holding that such claims were barred by the federal enclave doctrine. Dkt. 69. Shortly thereafter, Plaintiff moved to certify two FLSA collective actions and a class under Federal Rule of Civil Procedure 23. Dkts. 74, 75. The Court granted Plaintiff's motion on February 11, 2021, conditionally certifying the following FLSA collective actions: "All hourly workers residing in Arizona who traveled to remote job sites in California from November 21, 2015 to the present;" "All hourly workers residing in Arizona who were not paid for loading time at the Haxton yard from November 21, 2015 to the present." Dkt. 84. The Court also certified the class of "[a]ll Haxton hourly workers residing in Arizona who incurred lodging expenses for work in California from November 21, 2014 to the present." *Id.* Finally, the Court appointed David Jimenez as Class Representative and Plaintiff's counsel, Granahan Law, P.C. as Class Counsel. *Id.*

The Court approved the proposed class notice on March 19, 2021 [Dkt. 90] and denied Defendant's second motion for partial summary judgment as untimely on August 17, 2021 [Dkt. 94]. While this motion practice was ongoing, the Parties also attended three mediation sessions with Michael Roberts of ADR Services, Inc. on November 19, 2019, July 21, 2020, and September 20, 2021. Dkt. 105-1 Declaration of Conor Granahan ("Granahan Decl.") ¶ 5; Dkt. 105 at 2–3. The Parties reached an initial agreement following the third session, and Plaintiff filed an unopposed motion for preliminary approval of the settlement on December 23, 2021. Dkt. 98.

Plaintiff's motion for preliminary approval of the settlement outlined the key components of the settlement as follows: a Maximum Settlement Amount of $150,000, from which would be paid the Class Counsel's fees ($37,500), Class Counsel's litigation costs ($17,000), Settlement Administrator Costs ($5,000), PAGA allocation of $2,500, and the enhancement of $10,000 for the Class Representative, Plaintiff Jimenez. Dkt. 98; Dkt. 98-2. The resulting Net Settlement Amount would be $78,125. Dkt. 98; Dkt. 98-2. Of that, Plaintiff proposed that 30% would be allocated to the Collective Action claims and that 70% would be allocated to the Class Action Claims. Dkt. 98; Dkt. 98-2. On January 25, 2022, the Court issued an order granting preliminary approval of the settlement with modifications to ensure the class received proper notice and had

3

adequate time to file objections. Dkt. 104 ("Prelim. Approval Order"). Accordingly, the Court issued an order (1) preliminarily approving the settlement agreement; (2) preliminarily certifying the proposed certification classes; (3) appointing Plaintiff Jimenez as Class Representative; (4) designating Granahan Law, P.C. as Class Counsel; (5) appointing Phoenix Class Action Administration Solutions to administer the Settlement; (6) approving the form of Notice of Class Action Settlement and directing the manner of delivery; and (7) scheduling a fairness hearing for May 3, 2022. *Id.*

In accordance with the Court's Prelim. Approval Order, Phoenix Settlement Administrators, the Class Action Settlement Administrator, provided notice to the Class Members via first class mail and email (where available) on March 3, 2022. Dkt. 105-2 at ¶ 5. On April 16, 2022, the Class Action Settlement Administrator also submitted the settlement agreement and the date for the fairness hearing to the Labor and Workforce Development Agency ("LWDA") in accordance with Plaintiff's PAGA obligations. Granahan Decl., Ex. G. Under the Court's Prelim. Approval Order, written objections to the settlement were due by April 19, 2022. Dkt. 104. No written objections were lodged before or after the April 19, 2022 deadline. Also pursuant to the Prelim. Approval Order, the Parties filed the instant Motion for Final Approval of Class Action Settlement [Dkt. 105] and Motion for Attorney Fees and Costs [Dkt. 106].

The Court held a fairness hearing on May 3, 2022 pursuant to Federal Rule of Civil Procedure 23(e)(2), at which all Parties appeared. Dkt. 108 ("Fairness Hearing (May 3, 2022)"). The Parties advised that the Class Action Settlement Administrator had received inquiries from several individuals but confirmed that no written objections were lodged by April 19, 2022. Based on the moving papers, which are unopposed, and the representations of counsel at the hearing, as stated on the record, the Court found the final proposed settlement fair and reasonable, including the proposed distributions from the Maximum Settlement Amount of $150,000, and the PAGA requirements fulfilled. The Court likewise approved the requested attorneys' fees as appropriate—indeed, moderate – in light of the lengthy procedural history of this case.

**II.   DISCUSSION**

As a threshold matter, this Court has subject matter jurisdiction over Plaintiffs' claims

pursuant to 28 U.S.C. § 1332(d)(2). Both Parties have consented to the jurisdiction of a magistrate judge under 28 USC § 636. *See* Dkts. 13, 20. The Court first addresses Plaintiffs' motion for final approval of the class action settlement and then discusses Plaintiffs' motion for attorneys' fees and other expenses.

### A. THE COURT APPROVES THE FINAL CLASS ACTION SETTLEMENT AGREEMENT.

The settlement agreement contemplates a settlement class, which the Court preliminarily certified under Federal Rule of Civil Procedure 23(b)(1). Prelim. Approval Order at ¶ 3. The Court now confirms its findings and finally certifies the following class:

> (1) All hourly workers residing in Arizona who traveled to remote job sites in California from November 21, 2015, to the present; and,
> (2) All hourly workers residing in Arizona who were not paid for loading time at the Haxton yard from November 21, 2015, to the present.

Dkt. 98-2, Ex. 1 at 3; Dkt. 104. The Court also certifies the following Rule 23 class:

> All Haxton hourly workers residing in Arizona who incurred lodging expenses for work in California from November 21, 2014, to the present.

Dkt. 98-2, Ex. 1 at 3; Dkt. 104. Settlement agreements that will bind absent class members require judicial approval. Fed. R. Civ. Proc. 23(e)(2). In determining whether to approve such a settlement agreement, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n of City of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Courts in the Ninth Circuit consider the following factors announced in *Churchill* when making this evaluation:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Whether a proposed settlement is fair ultimately falls within the sound discretion of the district court. *See Class*

1  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

2        Here, as the Court stated at the hearing, the Court finds that the *Churchill* factors strongly weigh in favor of approving the final settlement agreement. After four years of vigorous litigation and three mediation sessions, class counsel negotiated a settlement that balances the strength of Plaintiffs' claims against the risk, expense, complexity and likely duration of further litigation. Even after this Court ruled on two partial motions for summary judgment, there are still a wide range off issues left to be decided regarding liability. The Parties have avoided the risk by agreeing to a $150,000 settlement, which the Court finds to be in the best interest of the settlement class. The average recoveries for the FLSA members is $1,660.71 and $979.91 for the California Class Members. Dkt. 105. Further, the extent of discovery over years of litigation favors settlement here; the Parties took the deposition of Plaintiff Jimenez, three defense witnesses, and two third-party witnesses, in addition to reviewing voluminous wage and hour records. Granahan Decl. at ¶ 5. The extent of discovery here gave the Parties a sufficient understanding of the issues involved in the case. This conclusion is supported by the fact that no class members filed objections in response to the settlement notices. Fairness Hearing (May 3, 2022); Granahan Decl. at ¶ 17. Finally, the Court finds that the enhancement for Plaintiff Jimenez is warranted for his service and participation in the litigation, including sitting for a deposition and joining in mediation. Dkt. 105 at 4–5; Dkt. 74-4 at ¶¶ 10–14.

19        In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval. *See Officers for Justice*, 688 F.2d at 625. The Court therefore approves the settlement agreement.

22  **B.  THE COURT APPROVES THE AWARD OF ATTORNEYS' FEES.**

23        In conjunction with seeking final approval of the class action settlement, as set forth in the settlement agreement, Plaintiffs filed an unopposed motion for attorneys' fees of 25% of the MSA, or $37,500, and reimbursement of litigation costs totaling $17,000. Dkt. 106. The Court finds these figures reasonable and awards the amounts in full.

27        In common fund cases, an award of 25% of the total fund is often the benchmark rate and the starting point for analysis. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

1  Nevertheless, the Court must support an attorneys' fee award with "findings that take into account
2  all of the circumstances of the case." *Id.* In particular, district courts should consider: "(1) the
3  results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the
4  contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made
5  in similar cases." *Hopkins v. Stryker Sales Corp.*, No. 11-02786-LHK, 2013 WL 496358, at *1
6  (N.D. Cal. Feb. 6, 2013) (citing *Vizcaino*, 290 F.3d at 1048–50). Additionally, district courts may
7  cross-check the reasonableness of a percentage award by comparing it to a lodestar calculation and
8  risk multiplier. *Vizcaino*, 290 F.3d at 1050.

9  As stated at the Fairness Hearing, the Court finds these fees eminently reasonable in light
10 of the length of this hard-fought action, the quality of representation, the size of the settlement
11 negotiated, and the financial burden on Class Counsel, which has not received any payment related
12 to this lawsuit. Fairness Hearing (May 3, 2022); Granahan Decl. ¶ 4. In fact, the Court finds the
13 fees requested modest for this district. *See, e.g.*, *Chavez v. Converse, Inc.*, No. 15-3746-NC, 2020
14 WL 10575028, at *5 (N.D. Cal. Nov. 25, 2020) (awarding attorneys' fees representing one third of
15 the total settlement).

16 A lodestar cross-check confirms the fee award's reasonableness. Under the lodestar
17 method, the court multiplies the number of hours counsel spent performing services by counsel's
18 hourly rate. *Vizcaino*, 290 F.3d at 1050-51; *Chavez*, 2020 WL 10575028, at *5. The court then
19 assesses whether the hourly rate and number of hours spent were reasonable. *Id.* After
20 determining the lodestar, the Court divides the total fees requested by the lodestar to arrive at a
21 multiplier. *Hopkins*, 2013 WL 496358, at *4. Based on Mr. Granahan's reasonable estimates, the
22 lodestar calculation amounts to $198,600, representing 331 hours expended at a blended hourly
23 rate of $600. Dkt. 106 at 4-5; Granahan Decl. at ¶¶ 5-6, 8-12. Thus, the 25% request amounts to
24 roughly 19% of Class Counsel's lodestar, a negative multiplier, which further supports the
25 reasonableness of the award. *See* Dkt. 106 at 5; *see also Weeks v. Google*, No. 18-0801-NC, 2019
26 WL 8135563, at *4 (N.D. Cal. Dec. 13, 2019); *Rosado v. Ebay Inc.*, No. 12-04005-EJD, 2016 WL
27 3401987, at *8 (N.D. Cal. June 21, 2016).

28 Therefore, the Court finds that, considering the results achieved and work performed, an

7

award of 25% of the MSA is warranted.  Additionally, there is no risk of a windfall because the requested amount indicates that Plaintiffs' counsel ultimately recovers less than the lodestar calculation.  *See, e.g.*, *Chavez*, 2020 WL 10575028, at *5.  Therefore, the requested amount falls within the range of reasonableness.

Moreover, the Court finds the number of hours expended reasonable based on: the work performed in the case as set forth in the Granahan Declaration; the reasonableness of that work; the reasonable hourly rates of counsel, which compare favorably to other rates awarded in this judicial district, and are supported by the Granahan Declaration as reasonable in this district for class action litigation; the complexity of this litigation; the skill and experience of Class Counsel and the quality of their representation; the substantial benefit made available to the Class as a result of the settlement in this action; and the risk of nonpayment.

The Court also finds that Class Counsel have incurred $17,000 in reasonable costs and expenses in this matter and therefore approves payment in that amount. *See* Granahan Decl. ¶ 7, Ex. B; *see also* Fed. R. Civ. Proc. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").  These costs and expenses were reasonably incurred in the ordinary course of prosecuting this case and were necessary given the complex nature of this matter and the zealous negotiation of a settlement.

### III. CONCLUSION

For the reasons stated above, the Court CERTIFIES the proposed settlement class, GRANTS Plaintiffs' unopposed motion for final approval of the class action settlement on the terms set forth in the settlement agreement, and GRANTS Plaintiffs' unopposed motion for attorneys' fees and other expenses, to be paid from the MSA.  *See* Dkt. 98-2.  The Court will retain jurisdiction of the matter through distribution to enforce the settlement and this Order.

The Parties are ORDERED to submit a status report on January 3, 2023 setting forth: (1) the amount of money dispersed from, and the amount of money left in, the settlement fund; (2) the number of class members that received a payment and the number that did not; and (3) any other updates that might assist the Court in overseeing the fair and just administration of the settlement.

1  The Clerk of Court is directed to administratively close the case.

2  **SO ORDERED.**

3  Dated: May 6, 2022

_____
SUSAN VAN KEULEN
United States Magistrate Judge